DAY PITNEY LLP

(MAIL TO) P.O. BOX 1945, MORRISTOWN, N.J. 07962-1945
(DELIVERY TO) 200 CAMPUS DRIVE, FLORHAM PARK, N.J. 07932-0950
(973) 966-6300
dkearney@daypitney.com

**ATTORNEYS FOR** Petitioners
Wachovia Bank, N.A., Wells
Fargo Advisors, LLC and Wells
Fargo & Company

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CAMDEN COUNTY MUNICIPAL
UTILITIES AUTHORITY,

       Plaintiff,

v.

WACHOVIA BANK N.A., f/k/a
FIRST UNION NAT'L BANK, as
successor-in-interest to FIRST
FIDELITY SEC. GROUP and FIRST
FIDELITY BANK, N.A.; WELLS
FARGO ADVISORS, LLC f/k/a
WACHOVIA SECURITIES, LLC,
f/k/a WACHOVIA SECURITIES,
INC., f/k/a FIRST UNION
SECURITIES as successor-in-
interest to BUTCHER & SINGER;
and WELLS FARGO & COMPANY as
successor-in-interest to
WACHOVIA CORPORATION f/k/a
FIRST UNION CORPORATION,

       Defendants.

HON.
Civil Action No.

**NOTICE OF REMOVAL
PURSUANT TO
28 U.S.C. § 1446(a)**

83226584A02110209

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY:

Petitioners Wachovia Bank, N.A., Wells Fargo Advisors, LLC and Wells Fargo & Company, Defendants in the above-captioned matter, by their undersigned attorneys, Day Pitney LLP, file this Notice of Removal of this cause from the Superior Court of New Jersey, Law Division, Camden County, in which it is now pending, to the United States District Court for the District of New Jersey.

1. Plaintiff Camden County Municipal Utilities Authority ("CCMUA") commenced this action by filing Complaint in the Superior Court of New Jersey, Law Division, Camden County, on or about September 25, 2009, captioned: *Camden County Municipal Utilities Authority v. Wachovia Bank, N.A.*, et als, Docket No. CAM-L-4844-09.   True copies of the Complaint, Summons and Civil Case Information Sheet are attached as Exhibit A.

2. Defendants were served with the Complaint on October 5, 2009, which is within thirty (30) days of this removal petition.   Therefore, this Notice of Removal is timely filed

pursuant to 28 U.S.C. §1446(b). Defendants have not filed their response to the Complaint in the state court. No other pleadings or papers have been filed in this action.

3. The Summons, Complaint, and Civil Case Information Sheet represent all the process and pleadings seen by Defendants and no hearings or other proceedings have taken place in this action to Defendants' knowledge.

4. The action is a civil action wherein CCMUA seeks to recover damages due to alleged improprieties in securing underwriting services.

5. A copy of the written notice required by 28 U.S.C. §1446(d), addressed to the adverse party and the Civil Clerk of Camden County is attached as Exhibit B and will be filed in the state court action and forwarded to CCMUA upon the filing of this Notice of Removal.

Jurisdiction Exists Under 28 U.S.C. §1332

6. The above-entitled action is one of which this Court has original jurisdiction pursuant to 28 U.S.C. §1332(a) and may be removed to this Court pursuant to 28 U.S.C. § 1441(a),

3

as there is complete diversity of citizenship between the parties and the matter in controversy as it appears in the Complaint, exceeds the sum of $75,000, exclusive of interest and costs.

The Amount in Controversy Exceeds $75,000

7. The Complaint alleges that one of Defendants' predecessor companies engaged in a scheme with CCMUA's financial advisor to increase a bond transaction's structuring fee that CCMUA was to pay to include an illegal kickback. *Complaint* at ¶24. CCMUA alleges that the structuring fee was increased "by $1.00 per bond" resulting in CCMUA overpaying $222,000 on its issuance of $237 million in municipal bonds. *Id.* ¶¶23, 32. In addition, CCMUA alleges that it suffered damages because "[n]ot only did [Defendant's predecessor] increase the structuring fee by $1.00 per bond, but it also padded other components of the underwriters' discount in anticipation of negotiating these fees downward with [Plaintiff's financial advisor]." *Id.* ¶25.

All Parties are Diverse

8. Upon the commencement of this action, as alleged in the Complaint, CCMUA is a municipal corporation organized

4

pursuant to New Jersey law, with a principal place of business in Camden County, New Jersey.

9.   Defendant Wells Fargo Advisors, LLC is a Delaware corporation with its principal place of business in Missouri.

10. Defendant Wells Fargo & Company is a financial holding company and bank holding company organized under the laws of Delaware, with its principal place of business in California.

11. Defendant Wachovia Bank, N.A. is a Delaware corporation with its principal place of business in North Carolina.

12. Defendants Wachovia Bank, N.A., Wells Fargo Advisors, LLC and Wells Fargo & Company are the only remaining defendants named in the Complaint.   The remaining named defendants no longer exist.

All Defendants Join in the Notice of Removal

13. All Defendants have consented to this removal.

WHEREFORE, Petitioners pray that the foregoing action be removed from the Superior Court of New Jersey, Law Division,

5

Camden County, to the United States District Court for the District of New Jersey.

DAY PITNEY LLP
Attorneys for Defendants
Wachovia Bank, N.A., Wells
Fargo Advisors, LLC and Wells
Fargo & Company

By: _Dennis T. Kearney_

DENNIS T. KEARNEY
A Member of the Firm

DATED: November 2, 2009

6

# EXHIBIT A

| | |
|---|---|
| Attorney(s)    Laurence E. Rosoff, Esq. | **Superior Court of** |
| Office Address   Camden County Municipal Utilities | **New Jersey** |
| Authority, 1645 Ferry Ave | |
| Town, State, Zip Code   Camden, NJ 08104 | |
| Telephone Number    (856) 541-3700 | Camden      COUNTY |
| Attorney(s) for Plaintiff | Law       DIVISION |

CAMDEN COUNTY MUNICIPAL UTILITIES AUTHORITY

Docket No: L-4844-09

---

Plaintiff(s)

Vs.

WACHOVIA BANK N.A., WELLS FARGO ADVISORS, LLC

AND WELLS FARGO & CO.

Defendant(s)

# CIVIL ACTION
# SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

     The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135 and completed Case Information Statement) if you want the court to hear your defense.

     If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

     If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Dated: Oct. 5, 2009

_____
Jennifer M. Perez,
Acting Clerk of the Superior Court

Name of Defendant to Be Served: Wachovia Bank, N.A.

Address of Defendant to Be Served: c/o Mayer Brown LLP

NOTE: The Case Information Statement is available at http://www.njcourtsonline.com

## DIRECTORY OF SUPERIOR COURT DEPUTY CLERK'S OFFICES
## COUNTY LAWYER REFERRAL AND LEGAL SERVICES OFFICES

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401

LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Room 115
Justice Center, 10 Main St.
Hackensack, NJ 07601

LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060

LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(800) 496-4570

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Justice
1st Fl., Suite 150
101 South 5th Street
Camden, NJ 08103

LAWYER REFERRAL
(856) 964-4520
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 N. Main Street
Cape May Court House, NJ 08210

LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
60 West Broad Street
P.O. Box 10
Bridgeton, NJ 08302

LAWYER REFERRAL
(856) 692-6207
LEGAL SERVICES
(856) 451-0003

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
Civil Customer Service
Hall of Records, Room 201
465 Dr. Martin Luther King Jr. Blvd.
Newark, NJ 07102

LAWYER REFERRAL
(973) 622-6204
LEGAL SERVICES
(973) 624-4500

Revised 7/1/2008, CN 10792
Revised 07/2009, CN 10153-English (Directory of Superior Court Deputy Clerk's Offices County Lawyer Referral and Legal Services)

page 2 of 4

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad Street
Woodbury, NJ 08096

LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House--1st Floor
583 Newark Ave.
Jersey City, NJ 07306

LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822

LAWYER REFERRAL
(908) 735-2611
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad Street, P.O. Box 8068
Trenton, NJ 08650

LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court,
Middlesex Vicinage
2nd Floor - Tower
56 Paterson Street, P.O. Box 2633
New Brunswick, NJ 08903-2633

LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
Court House
P.O. Box 1269
Freehold, NJ 07728-1269

LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY:**
Morris County Courthouse
Civil Division
Washington and Court Streets
P. O. Box 910
Morristown, NJ 07963-0910

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
118 Washington Street,  Room 121
P.O. Box 2191
Toms River, NJ 08754-2191

LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton Street
Paterson, NJ 07505

LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 523-2900

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
Attn: Civil Case Management Office
92 Market Street
Salem, NJ 08079

LAWYER REFERRAL
(856) 678-8363
LEGAL SERVICES
(856) 451-0003

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
P.O. Box 3000
40 North Bridge Street
Somerville, N.J. 08876

LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY:**
Deputy Clerk of the Superior Court
1st Fl., Court House
2 Broad Street
Elizabeth, NJ 07207-6073

LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere, NJ 07823-1500

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(908) 475-2010

Revised 7/1/2008, CN 10792
Revised 07/2009, CN 10153-English (Directory of Superior Court Deputy Clerk's Offices County Lawyer Referral and Legal Services)

page 4 of 4

# CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for initial Law Division – Civil Part pleadings (not motions) under Rule 4:5-1.

**Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed.**

| FOR USE BY CLERK'S OFFICE ONLY | |
|---|---|
| PAYMENT TYPE: | CK  CG  CA |
| CHG/CK NO. | 141982 |
| AMOUNT: | 200. |
| OVERPAYMENT: | |
| BATCH NUMBER: | B009 |

| ATTORNEY/PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| Laurence E. Rosoff, Esq. | ( 856 ) 583-1270 | Camden |

| FIRM NAME (If applicable) | DOCKET NUMBER (When available) |
|---|---|
| Camden County Municipal Utilities Authority ("CCMUA") | L-4844-09 |

| OFFICE ADDRESS | DOCUMENT TYPE |
|---|---|
| 1645 Ferry Avenue | COMPLAINT |
| Camden, NJ  08104 | |

FILED SEP 25 2009 CAMDEN COUNTY SUPERIOR COURT

JURY DEMAND: ☑ YES  ☐ NO

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
|---|---|
| Camden County Municipal Utilities Authority (CCMUA), Plaintiff | SEE ATTACHED FOR COMPLETE CAPTION |

| CASE TYPE NUMBER (See reverse side for listing) | IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES  ☑ NO |
|---|---|
| 699 | IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |

| RELATED CASES PENDING?  ☐ YES  ☑ NO | IF YES, LIST DOCKET NUMBERS |
|---|---|

| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)?  ☐ YES  ☑ NO | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN  ☐ NONE  ☑ UNKNOWN |
|---|---|

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| A. DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?  ☑ YES  ☐ NO | IF YES, IS THAT RELATIONSHIP | ☐ EMPLOYER-EMPLOYEE  ☐ FRIEND/NEIGHBOR  ☐ OTHER (explain) _____  ☐ FAMILIAL  ☑ BUSINESS _____ |
|---|---|---|

B. DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?  ☐ YES  ☑ NO

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

This is a fraud case brought by Plaintiff CCMUA against the successors to the financial institutions which defrauded Plaintiff in a series of financial transactions in which they bribed fiduciaries of Plaintiff to win contracts related to the issuance of $237 million in bonds for Plaintiff CCMUA in 1990 and the sale and purchase of U.S. Treasury bonds in 1994 and then defrauded Plaintiffs again in the performance of the transactions governed by those contracts.  Plaintiff was damaged by the fraud of Defendants' predecessors in interest and those damages consist of Defendants' fraudulently obtained profits, compensatory damages, pre and post judgment interest and punitive damages, in an amount to be determined at trial which will be in excess of $7 million.  ⊞

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?  ☐ YES  ☑ NO | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION: _____ |
|---|---|
| WILL AN INTERPRETER BE NEEDED?  ☐ YES  ☑ NO | IF YES, FOR WHAT LANGUAGE: _____ |

| ATTORNEY SIGNATURE | |
|---|---|
| Laurence E. Rosoff | 9/24/2009 |

Revised effective 4/1/05

LAURENCE E. ROSOFF, ESQUIRE
Camden County Municipal Utilities Authority
1645 Ferry Ave.
Camden, NJ 08104
(856) 541-3700
Attorney for Plaintiff

RECEIVED

09 SEP 25  AM 9: 29

SUPERIOR COURT/LAW DIVISION

| | |
|---|---|
| CAMDEN COUNTY MUNICIPAL UTILITIES AUTHORITY, <br><br> Plaintiff, <br><br> v. <br><br> WACHOVIA BANK N.A. F/K/A FIRST UNION NAT'L BANK AS SUCCESSOR-IN-INTEREST TO FIRST FIDELITY SEC. GROUP AND FIRST FIDELITY BANK N.A.; WELLS FARGO ADVISORS, LLC F/KA WACHOVIA SECURITIES LLC F/K/A WACHOVIA SECURITIES INC. F/K/A FIRST UNION SECURITIES AS SUCCESSOR-IN-INTEREST TO BUTCHER & SINGER; AND WELLS FARGO & COMPANY AS SUCCESSOR-IN-INTEREST TO WACHOVIA CORPORATION F/K/A FIRST UNION CORPORATION <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION – CIVIL <br><br> CAMDEN COUNTY <br><br> Docket No. CAM-L- |

## COMPLAINT AND JURY DEMAND

The plaintiff, Camden County Municipal Utilities Authority ("CCMUA"), by way of

Complaint, states that:

with Wells Fargo & Company.  At that time Wells Fargo & Company acquired all of Wachovia Corporation and its businesses and obligations.

6.     Wells Fargo Advisors, LLC, f/k/a Wachovia Securities, LLC, f/k/a Wachovia Securities, Inc., f/k/a First Union Securities, is now part of Wells Fargo & Company.

7.     First Union Securities, as the corporate successor by acquisition of Wheat and WFB&S, is liable to the plaintiff herein for the latter's actions and the actions of their employees and agents acting within the scope of their respective employments.  Wells Fargo Advisors, LLC, f/k/a Wachovia Securities, LLC, f/k/a/ Wachovia Securities, Inc., by virtue of its merger with and name change from First Union Securities to Wachovia Securities, is the corporate successor of Wheat, B&S and WFB&S and responsible to the plaintiff for their actions and the actions of their employees and agents acting within the scope of their respective employments.

8.     Upon information and belief, and in the alternative, Wells Fargo & Company is the corporate successor of Wachovia Corporation and the owner of Wells Fargo Advisors, LLC, f/k/a Wachovia Securities, LLC, f/k/a Wachovia Securities, Inc., the corporate successor of First Union Securities, Wheat, B&S, and WFB&S, and is liable to the plaintiff for their actions and the actions of their employees and agents acting within the scope of their respective employments.

9.     Wells Fargo & Company is named as a defendant herein because the corporate status of the former First Union Securities within Wachovia Corporation after the 2001 merger of First Union Corporation and Wachovia Corporation is unclear from the public record, as is

its corporate status within Wells Fargo & Company after the December 31, 2008 merger of Wachovia Corporation and Wells Fargo & Company.

10.     Defendant Wachovia Bank, N.A. f/k/a First Union National Bank is the corporate successor by merger of First Union National Bank, N.A.  First Union National Bank was the successor in interest by acquisition of First Fidelity Securities Group ("FFSG"), a Department within the treasury division of First Fidelity Bank N.A., New Jersey ("FFB").  In 2002 First Union National Bank merged with and changed its name to Wachovia Bank, N.A. Wachovia Bank, N.A. was Wachovia Corporation's primary banking affiliate, and is a national bank headquartered in Charlotte, North Carolina.

11.     FFSG was a municipal securities dealer as defined in Section 3(a)(30)(b) of the 1934 Securities and Exchange Act ("The Exchange Act") and was registered with the Securities and Exchange Commission ("SEC") pursuant to Section 15B(a)(2) of the Exchange Act.  FFSG was a separate identifiable department of the treasury division of FFB which, in turn, was a wholly owned subsidiary of a bank holding company, First Fidelity Bancorporation.  On June 18, 1995 First Fidelity Bancorporation entered into an agreement with First Union Corporation which, *inter alia*, provided for the merger of FFB with and into a wholly owned subsidiary of First Union Corporation, namely First Union National Bank. The merger closed on January 1, 1996.

12.     As a result of the merger, FFSG's municipal securities business was thereafter conducted by First Union's registered broker-dealer subsidiary.

13.     First Union National Bank, as the corporate successor by acquisition of FFSG and FFB, is liable to the plaintiff herein for the actions taken by each of them.  Wachovia

Bank, N.A., by virtue of its merger with and into First Union National Bank, and subsequent name change to Wachovia Bank, is the corporate successor of and responsible to the plaintiff for the actions of FFSG and FFB and their corporate successors. As such, it is liable to the plaintiff for their actions and the actions of their employees and agents acting within the scope of their respective employments.

14. Upon information and belief, and in the alternative, Wells Fargo & Company, is the corporate successor of Wachovia Corporation and the owner of Wachovia Bank, N.A. f/k/a/ First Union National Bank, the corporate successor of FFSG and FFB, and is liable to the plaintiff for its actions and the actions of its employees and agents acting within the scope of their respective employments.

15. Wells Fargo & Company is named as a defendant herein because the corporate status of Wachovia Bank, N.A. f/k/a First Union National Bank after the December 31, 2008 merger of Wachovia Corporation and Wells Fargo & Company is unclear from the public record.

16. The statute of limitations on the claims alleged in this Complaint ceased running against CCMUA in November 2001.

## THE TRANSACTIONS

17. In the latter part of 1988, FFSG and B&S began to analyze whether the outstanding debt of plaintiff could be refinanced and refunded. Over approximately the next yea, FFSG and B&S discussed their respective analyses with various individuals and entities, including Consolidated Financial Management, Inc. ("CFM"), the financial advisor to CCMUA. These discussions led to a recommendation to CCMUA that it refund part of its

debt and increase its capital by issuing approximately two hundred million dollars ($200,000,000) worth of bonds.

18.     CFM was a fiduciary of CCMUA and owed it the corresponding fiduciary duties, including those of loyalty and care, and was obligated to act in the best interest of CCMUA and not to obtain any benefit at the expense of CCMUA.

19.     On February 21, 1990, the recommendation was carried out by the plaintiff. On that date it issued and sold approximately $237,000,000 worth of bonds through an underwriting group led by FFSG.

20.     CCMUA subsequently discovered that FFSG, FFB and B&S had engaged in a bribery scheme with CCMUA's financial advisor, CFM, since at least late 1989 or early 1990, which was designed to profit them illegally by (1) securing for FFSG the position of lead underwriter for the proposed February 1990 bond issue, (2) securing for FFB by rigged bidding the position of provider of Government securities under a Forward Supply Contract to the trustee of a Special Reserve Fund to be established contemporaneously with the sale of the bonds, (3); having FFSG split its fees and commissions on the municipal bond issue with B&S, which was conducting the rigged bidding, and with other participants in the scheme, (4) paying secret kickbacks to CCMUA's financial adviser, CFM, (5) concealing the activities of the enterprise from CCMUA by such tactics as making false book entries, using conduits for the payment of kickback funds, filing false certifications with CCMUA concerning the bidding, and (6) producing phony invoices which were paid and charged to CCMUA as if they were legitimate expenses of the bond offering.  CCMUA did not discover the existence of this bribery scheme until much later.

21.     Prior to the bond offering, in or about February 1989, CCMUA reduced CFM's financial advisory fee on plaintiff's proposed 1990 bond offering to a flat fee of approximately $15,000.

22.     In prior offerings, CFM had received $1.00 per $1,000 face value of bonds, otherwise known as a "$1.00 per bond" deal. In or about December 1989, CFM informed FFSG that it still wanted to receive $1.00 per bond for working on plaintiff's February 1990 bond offering and it wanted FFSG to pay it. To obtain and solidify its position as lead underwriter, FFSG agreed to pay CFM the difference between the $15,000 that CCMUA would pay CFM and what $1.00 per bond would realize for CFM, which at the time was expected to be approximately $200,000. Neither the agreement to pay kickbacks to CFM nor the payments themselves were disclosed to CCMUA.

23.     This agreement between CCMUA's financial adviser and its lead underwriter was a conspiracy to defraud, and in fact did defraud CCMUA, in that FFSG would be paying, and did in fact pay, a kickback to CFM in order to secure FFSG's position as lead underwriter on the bond offering. CCMUA was not told that CFM, its financial advisor, was the recipient of kickbacks from FFSG, the company which CFM recommended for the position as lead underwriter.

24.     As part of the underwriter's discount in connection with the CCMUA February 1990 bond offering ("the offering"), FFSG intended to include a structuring fee in the underwriters' discount ostensibly to compensate it for the work that FFSG had performed in putting the plaintiff's offering together. In order to pay CFM the "$1.00 per bond fee" that CFM had insisted upon, FFSG decided to increase the structuring fee that CCMUA was to pay

to include the $1.00 per bond kickback. As a result of the failure of CFM to even attempt to negotiate a lower structuring fee, the CCMUA actually paid the money to FFSG, which unbeknownst to the CCMUA, was then used to bribe CFM.

25. Not only did FFSG increase the structuring fee by $1.00 per bond, but it also padded other components of the underwriters' discount in anticipation of negotiating these fees downward with CFM.

26. FFSG submitted the inflated underwriters' discount to CFM for approval. FFSG explained to CFM that the structuring fee was to compensate FFSG and B&S for the work that they had done regarding the structuring of the offering. FFSG emphasized to CFM that the fee was increased by "'other' or 'unusual'" expenses – a reference to the kickback FFSG was going to pay CFM.

27. Contrary to its usual practice, and in violation of its duties to the CCMUA, which it was serving as financial advisor, CFM did not attempt to negotiate downward the amount of the underwriters' discount, which it should have done, and instead it accepted the inflated figures presented by FFSG, thereby requiring CCMUA to unknowingly pay the bribe by FFSG to CFM.

28. The underwriters' discount schedule that FFSG submitted to plaintiff on behalf of FFSG and B&S for plaintiff's bond offering failed to disclose that the underwriters' discount was padded to include a kickback to CFM and to cover the fact that FFSG had a side agreement to share its profits with B&S, which, as set forth hereinafter, had disclosed confidential information to FFSG, in violation of its certification to CCMUA, that permitted

FFSG to become the high bidder on the sale of government securities to the escrow fund set up as part of the bond deal.

29.    In or about January 1990, FFSG decided to (a) pay the kickback and (b) to conceal the kickback within FFSG's records.

30.    In order to pay the kickback and to disguise its existence, FFSG agreed to pay and did pay the kickback through another company, Meadowlands Securities, Inc. ("Meadowlands"), which was to transfer part of the payment to it to Armacon Investment Company ("Armacon"), a company owned by one of the two principals of CFM.

31.    The distribution by Meadowlands of those funds to Armacon, which then shared them with CFM as set forth herein knowing that they were part of an illegal kickback, represents Meadowlands' agreement to join in the conspiracy to defraud CCMUA by serving as cover conduit for the kickbacks.

32.    Plaintiff issued approximately $237 million in municipal bonds on or about February 21, 1990. At $1.00 per bond, the kickback due CFM from FFSG pursuant to their unlawful agreement was $222,000 ($237,000 less the $15,000 advisory fee to be paid directly to CFM by CCMUA).

33.    In a series of payments ending on or about December 3, 1990, FFSG paid $595,000 to Meadowlands, which included a payment to Meadowlands of FFSG's $1.00 per bond kickback to CFM.

34.    In turn Meadowlands paid $335,500 to Armacon between February 27, 1990 and April 17, 1990. Included in this $335,500 payment was FFSG's $1.00 per bond kickback

to CFM. Between March 9, 1990 and April 25, 1990, Armacon transferred $240,000 to CFM.

35.    As a result of the actions of FFSG, B&S, CFM, Meadowlands, and Armacon, and to hide its fraud on CCMUA, FFSG falsely recorded all payments to Meadowlands as cash disbursements to Meadowlands. Meadowlands is not disclosed in the official Public Offering Statement as an underwriter and its presence in the deal as a conduit of the bribe to CFM was not disclosed to CCMUA. There is no record in FFSG's municipal securities dealer books and records on CCMUA's bond offering of any payment, however disguised, to CFM in connection with the plaintiff's offering. FFSG's municipal securities dealer books and records were also false because they overstated the payment to Meadowlands in order to cover up the kickback to CFM.

36.    To pay the last $22,000 of the kickback to CFM, FFSG requested and received from CFM a false invoice representing that CFM had assisted FFSG in a March 1990 debt offering of the Town of West New York Municipal Utilities Authority whereas, in fact, CFM had done no work on that offering.

37.    CFM submitted a false invoice and FFSG paid the false invoice. FFSG did not record this payment to CFM on FFSG's municipal securities books on CCMUA's offering, but rather listed it falsely as a "consulting fee" on the West New York offering.

38.    FFSG and FFB obtained the positions of lead underwriter on the bond issue and supplier of government securities to the escrow by unlawful, and illegal means involving bribery of CCMUA's financial advisor, false entries in books and records, fraud on CCMUA by having it unknowingly pay the bribe to CFM by fraudulently increasing or padding the

underwriters' discount with CFM's fraudulent acquiescence, and violations of its certifications to CCMUA that the bidding competition by B&S was conducted in accordance with normal business practices without disclosing confidential information to any bidder.

39.    Once having obtained the right to buy securities from the Special Reserve Fund and to be the seller of government securities to the Fund by illegal and unlawful means, FFB when buying securities from the Fund fraudulently and wrongfully underpaid the fair market value for the securities that it bought and fraudulently and wrongfully overcharged beyond fair market value for securities which it sold to the Fund in an essentially riskless transaction. These purchases from and sales to the Special Reserve Fund by FFB were done initially in February and March 1990, in connection with the issuance of the bonds and again on or about March 14, 1994, when the Special Reserve Fund was restructured.

## COUNT ONE RELIEF SOUGHT
### (DISGORGEMENT OF PROFITS)

40.    Having obtained the contracts with CCMUA identified in paragraphs 38 and 39 by illegal and unlawful actions, New Jersey law requires that FFSG, FFB, Wheat First, B&S and by operation of law their corporate successors, including Wachovia Bank, N.A., Wells Fargo Advisors and Wells Fargo Corporation, disgorge all profits realized as underwriters on the 1990 bond issue and profits from the securities purchases and sales from and to the Special Reserve Fund.

WHEREFORE, the plaintiff demands judgment from the responsible defendants, as alleged, of all profits as found by the jury plus pre- and post- judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

## COUNT TWO
### (COMMON LAW FRAUD AND CONSPIRACY)

41.     Plaintiff repeats the allegations of paragraphs 1-40.  Pleading in the alternative, plaintiff alleges as follows.

42.     CFM, Meadowlands, Armacon, and FFSG, entered in a combination and conspiracy to defraud plaintiff by bribing CFM for FFSG to become lead underwriter and by covering up their illegal activity from plaintiff, and did in fact defraud the plaintiff in the manner alleged in paragraphs 17 to 40 hereinabove.

43.     In entering into the conspiracy and in carrying it out, the defendants, as successors to the various corporate entities acted intentionally and with *scienter* thereby making it appropriate to award compensatory damages to the plaintiff.

44.     As the result of the fraud of the defendants, the plaintiff has been injured.

WHEREFORE, plaintiff demands judgment, jointly and severally, against each defendant for all relief demanded in Count One, and for compensatory damages as determined by the Court and Jury at trial, pre- and post- judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

## COUNT THREE
### (BREACH OF CONTRACT)

45.     Plaintiff repeats the allegations of paragraphs 1-44 of this Complaint.  Pleading in the alternative, plaintiff alleges as follows.

46.     The aforementioned acts, deeds and omissions of FFSG, B&S, and non-party CFM constituted a breach of their contracts either with or for the benefit of plaintiff to serve as

loyal financial advisors and fiduciaries and to deal fairly and in good faith with plaintiff CCMUA. Defendants also breached their covenant that the underwriter's discount and structuring fees would be calculated without consideration of any illegal and improper kickbacks to any firm or individual associated with the securities offering, that such fees would be reasonable, and that the bonds and government securities would be sold and/or bought at reasonably competitive prices derived in good faith, arms length transactions.

47.    As a result of their breaches of contracts by defendants and their corporate predecessors, plaintiff has been injured.

WHEREFORE, plaintiff demands judgment for all relief demanded in Counts One and Two, and for compensatory damages as determined by the Court and Jury at trial, pre- and post- judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

## COUNT FOUR
### (BREACH OF FIDUCIARY DUTY)

48.    Plaintiff repeats the allegations of paragraphs 1-47. Pleading in the alternative, plaintiff alleges as follows.

49.    FFSG, B&S and third party CFM owed the duties of a fiduciary to plaintiff as a result of their special relationship to plaintiff and the faith and trust which CCMUA placed in them.

50.    This special relationship to plaintiff arose out of FFSG's participation in the sale of plaintiff's bonds in 1990 and the purchase and sale of securities for plaintiff's special reserve fund.

51. The aforementioned acts of FFSG and its co-conspirators CFM and B&S violated the trust, confidence, good faith, and fair dealing to which plaintiff was entitled from these entities in these transactions.

52. Plaintiff CCMUA was injured as a result of defendants' breaches of their fiduciary duties.

WHEREFORE, CCMUA demands judgment against the defendants as corporate successors of FFSG and B&S for all relief demanded under Counts One, Two and Three, and for compensatory damages as determined by the Court and Jury at trial, pre- and post-judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

## COUNT FIVE
### (UNJUST ENRICHMENT)

53. Plaintiff repeats the allegations of paragraphs 1-52.

54. Defendants FFSG and FFB were paid fees and commissions and thereby profited from the proceeds of the 1990 bond issues, and the 1990 and 1994 purchases and sales to and from the Special Reserve Fund which they did not earn, and which they received by reason of their illegal and unlawful frauds upon the plaintiff, and which in equity and good conscience by virtue of the facts set forth in this Complaint they should be required to reimburse CCMUA all such funds.

55. FFSG and FFB were unjustly enriched at the expense of CCMUA and they should disgorge to CCMUA all such fees, commissions, profits, underpayments, and overcharges.

WHEREFORE, CCMUA demands judgment against the defendant successors-in-interest to FFSG and FFB of all profits, including in whatever amount was paid to it or by it in fees, commissions, underpayments, and overpayments, and for compensatory damages as determined by the Court and Jury at trial, pre- and post- judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

## COUNT SIX
### (BREACH OF CERTIFICATION)

56.     Plaintiff repeats the allegations of paragraphs 1-55. Pleading in the alternative, plaintiff alleges as follows.

57.     B&S, in a scheme with FFSG while acting as a broker for CCMUA, undertook to obtain bids from two potential providers of government securities to the Special Reserve Fund under a forward supply contract with a Trustee for CCMUA which maintained a Special Reserve Fund set up at the time of the February 1990 bond issue by CCMUA.

58.     Knowing and intending that plaintiff would rely on its representations and certifications in its position as broker, B&S provided a Certificate to CCMUA dated February 21, 1990 in which it certified, *inter alia*, that it

> . . . conducted the bidding process in accordance with the standards and practices normally and customarily used by a broker in obtaining forward supply contracts and the relationship of the Broker with the winning bidder is consistent with such normal and customary standards and practices.
> (Certificate ¶3).

59.     Further the Broker, B&S, certified that

> The Broker did not convey any information to any bidder inducing the bidder to bid a lower interest rate than that which was induced by the bid request letter. (Certificate ¶7).

60.    Finally, the Broker, B&S, certified that

> . . . to the best of the Broker's knowledge, no payments will be made by or on behalf of the provider to any person. (Certificate ¶9).

61.    The winning bidder First Fidelity Bank, N.A., New Jersey, knowing and intending that plaintiff would rely on its representations and certifications, provided its certificate in which, as Provider under the Forward Supply Contract, it certified that

> ...no payments will be made by or on behalf of the Provider to Butcher & Singer Inc., Pacific Matrix Financial Group or to any other person in connection with the bidding of the Forward Supply Contract.

62.    With respect to the purchases and sales of Government Securities to and from the Special Reserve Fund in March 1994, defendant FFB represented to CCMUA on March 31, 1994, that

> (2)    There is an established market for the trading of the Government Securities. Such a market has existed for at least four weeks.

> (3)    The prices of the Government Securities which have been purchased by us from the Trustee or which have been sold by us to the Trustee were determined in arms' length negotiations.

> (5)    The price of each Original Investment was no lower than the price which we would have paid to any other seller contracting at the same time for future delivery and payment of the same time period with the same risks relating to closing the transaction.

> (6)    The price of each New Investment was no higher than the price we could have received from any other buyer contracting at the same time for future delivery and payment of the same time period with the same risks related to closing the transaction.

63.    In breach of the certifications by FFB and First Union, B&S had, in fact, disclosed to FFB that a bid of 7.63% yield on the Forward Supply Contract would be a successful bid, whereupon FFB bid 7.63% and became the provider to and purchaser from the Trustee of the Special Reserve Fund of the Government Securities.

64.    The information conveyed to FFB by B&S permitted it to win the bidding scheme at a percentage rate high enough to "win" the bidding and low enough to make a profit on the transactions.

65.    Unbeknownst to CCMUA, FFB intended to pay, and later actually did pay to B&S, over $1 million.

66.    This payment, which was not disclosed to CCMUA, (a) breached the conditions of the certificates of FFB and B&S, (b) violated their fiduciary obligations of candor and loyalty to CCMUA, and (c) breached the obligation of good faith and fair dealing which FFB owed to CCMUA.

WHEREFORE, CCMUA demands judgment against the defendants as successor corporations all relief demanded in Counts One through Six and for compensatory damages as determined by the Court and Jury at trial, pre- and post- judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

## COUNT SEVEN
### (NEGLIGENCE)

67.    Plaintiff repeats the allegations of paragraphs 1-66.  Pleading in the alternative, plaintiff alleges as follows.

68.    The defendants were negligent and failed to exercise due care and the care commensurate with generally accepted practices in their business dealings with the plaintiff and the financial transaction in which defendants were engaged as described above.

69.    The defendants were also negligent by failing to exercise due care by properly instructing and supervising their employees with regard to the standards and requirements to which these corporate defendants and their employees were bound in the above described transactions with plaintiff or on its behalf including but not limited to requirements of disclosure, good faith and fair dealing, and good faith arms length negotiation.

70.    These negligent acts and omissions by defendants were the proximate cause of substantial economic harm, injury and damage to plaintiff CCMUA, including but not limited to funds which otherwise would have inured to the benefit of CCMUA being paid to others in the form of inflated underwriter fees, lower sales prices and higher purchase prices on the securities bought and sold for the special reserve fund and otherwise.

**Wherefore**, and in the alternative, plaintiff CCMUA demands judgment against defendants jointly and severally for all relief demanded under Counts One through Seven and for compensatory damages as determined by the Court and Jury at trial, pre- and post-judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

## COUNT EIGHT
### (TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS)

71.    Plaintiff repeats the allegations of paragraphs 1-66. Pleading in the alternative, plaintiff alleges as follows.

72.    In 1990 plaintiff in furtherance of its governmental purpose of providing wastewater treatment and sewer service in an economically efficient manner to the residents of the County of Camden, issued bonds, and in connection with that refinancing bond issue created a Special Reserve Fund which was funded with government securities.

73.    In 1994 plaintiff restructured its special reserve fund by selling securities in the fund and purchasing other securities for the fund.

74.    Plaintiff engaged FFB to buy and sell securities for it in arms length, good faith transactions in which plaintiff would a) pay a fair arms length, reasonable price for the securities it purchased; b) be paid a fair, arms length reasonable price for securities it sold; c) issue bonds at a fair arms length reasonable rate of interest; d) pay fair, arms length, reasonable charges for such costs as underwriter's fees.

75.    Defendants intentionally interfered with plaintiff's contractual rights and expectations by, among other things, (a) failing to disclose and intentionally hiding payments to CFM, B&S, Meadowlands, and Armacon, (b) failing to engage in good faith arms length negotiation of such transactional costs as underwriter fees, and the purchase price of securities.

76.    Such intentional interference with advantageous contractual relations was the proximate cause of economic loss and damage to the plaintiff.

WHEREFORE, plaintiff CCMUA demands judgment against defendants for all relief demanded in Counts One through Eight and for compensatory damages as determined by the Court and Jury at trial, pre- and post- judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

## COUNT NINE

**(Punitive Damages)**

77.     Plaintiff repeats the allegations of paragraphs 1-66 and 71-76 of this Complaint.

78.     Plaintiff was harmed by the acts and omissions of the defendants' predecessors as set out in those portions of this Complaint identified in paragraph 77.  These harmful acts and omissions were motivated by actual malice, or were accompanied by a wanton and willful disregard of the plaintiff's rights to fair, equitable and disclosed transactions, and plaintiff would forseeably have been and was harmed by these acts and omissions.

79.     These actions, at the discretion of the jury, call for the imposition of punitive damages, to punish the defendants, which bear legal responsibility for the intentional and malicious acts of their corporate predecessors, and which have ratified and approved of their actions by purchasing the perpetrators of these actions without reservation or exception.

WHEREFORE, the plaintiff seeks a judgment for punitive damages against the defendants in an amount found by the jury sufficient to punish the defendants for the acts of those entities for which these defendants are responsible and in an amount to serve as a warning to other persons and entities serving in the same or similar circumstances not to engage in such actions as the corporate predecessors of these defendants did.

Dated: September 24, 2009

Laurence E. Rosoff

Laurence Rosoff, Esq.
Camden County Municipal Utilities Authority
1645 Ferry Avenue
Camden, NJ 08101-1432
Telephone:     856.541.3700 ext. 1270

Nathan D. Finch (*pro hac vice* pending)
Caplin & Drysdale, Chartered
One Thomas Circle NW, Suite 1100

Washington, DC 20005
Telephone:    202.862.5000

## Certification

Pursuant to and in accordance with Rule 4:5-1, the undersigned counsel hereby certifies that the matter in controversy is not the subject is not the subject of any other action pending in any court or of a pending arbitration proceeding nor is any other court action or administrative proceeding contemplated. Further, other than the parties set forth in this complaint, I know of no other parties that should be made a part of this lawsuit. In addition, I recognize my continuing obligation to file and serve on all parties and the Court an amended certification if there is a change in the facts stated in this original certification.

Dated: September 24, 2009

_____
Laurence Rosoff, Esq.

## Stipulation of Counsel

Plaintiff hereby stipulates that Nathan D. Finch, Esq., will upon Pro Hac Vice admission be designated trial counsel for Plaintiff.

Dated: September 24, 2009

_____
Laurence Rosoff, Esq.

## JURY DEMAND

The Plaintiff demands a trial by jury on all of the triable issues of this complaint,

pursuant to New Jersey Court Rules 1:8-2(b) and 4:35-1(a).

Dated: September 24, 2009

Laurence E. Rosoff
_____
Laurence Rosoff, Esq.

# EXHIBIT B

DAY PITNEY LLP

(MAIL TO) P.O. BOX 1945, MORRISTOWN, N.J. 07962-1945
(DELIVERY TO) 200 CAMPUS DRIVE, FLORHAM PARK, N.J. 07932-0950
(973) 966-6300

**ATTORNEYS FOR DEFENDANTS**
Wachovia Bank, N.A., Wells
Fargo Advisors, LLC and Wells
Fargo & Company

CAMDEN COUNTY MUNICIPAL
UTILITIES AUTHORITY,

   Plaintiff,

v.

WACHOVIA BANK N.A., f/k/a
FIRST UNION NAT'L BANK, as
successor-in-interest to FIRST
FIDELITY SEC. GROUP and FIRST
FIDELITY BANK, N.A.; WELLS
FARGO ADVISORS, LLC f/k/a
WACHOVIA SECURITIES, LLC,
f/k/a WACHOVIA SECURITIES,
INC., f/k/a FIRST UNION
SECURITIES as successor-in-
interest to BUTCHER & SINGER;
and WELLS FARGO & COMPANY as
successor-in-interest to
WACHOVIA CORPORATION f/k/a
FIRST UNION CORPORATION,

   Defendants.

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION-CAMDEN COUNTY
DOCKET NO. CAM-L-4844-09

**NOTICE OF REMOVAL
TO FEDERAL COURT PURSUANT
28 U.S.C. §1446(a)**

83226998A01110209

TO:        Laurence E. Rosoff, Esq.
           Camden County Municipal Utilities Authority
           1645 Ferry Ave.
           Camden, NJ 08104

        PLEASE TAKE NOTICE THAT Wachovia Bank, N.A., Wells

Fargo Advisors, LLC and Wells Fargo & Company, Defendants in the

above-captioned matter, by its undersigned attorneys, Day Pitney

LLP, file the within Notice of Removal of this case from the

Superior Court of New Jersey, Law Division, Camden County, in

which it is now pending, to the United States District Court for

the District of New Jersey.  Enclosed are copies of the Notice of

Removal as filed with the Clerk of the United States Court.


        Pursuant to 28 U.S.C. §1441, the within action is now

removed.


                              DAY PITNEY LLP
                              Attorneys for Defendants
                              Wachovia Bank, N.A., Wells
                              Fargo Advisors, LLC and Wells
                              Fargo & Company

                       By:  _Dennis T. Kearney_____
                              DENNIS T. KEARNEY
                              A Member of the Firm



DATED: November __2__, 2009

DAY PITNEY LLP
(MAIL TO) P.O. BOX 1945, MORRISTOWN, N.J. 07962-1945
(DELIVERY TO) 200 CAMPUS DRIVE, FLORHAM PARK, N.J. 07932-0950
(973) 966-6300

ATTORNEYS FOR DEFENDANTS
Wachovia Bank, N.A., Wells
Fargo Advisors, LLC and Wells
Fargo & Company

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION-CAMDEN COUNTY
DOCKET NO. CAM-L-4844-09

CAMDEN COUNTY MUNICIPAL
UTILITIES AUTHORITY,

        Plaintiff,

v.

WACHOVIA BANK N.A., f/k/a
FIRST UNION NAT'L BANK, as
successor-in-interest to FIRST
FIDELITY SEC. GROUP and FIRST
FIDELITY BANK, N.A.; WELLS
FARGO ADVISORS, LLC f/k/a
WACHOVIA SECURITIES, LLC,
f/k/a WACHOVIA SECURITIES,
INC., f/k/a FIRST UNION
SECURITIES as successor-in-
interest to BUTCHER & SINGER;
and WELLS FARGO & COMPANY as
successor-in-interest to
WACHOVIA CORPORATION f/k/a
FIRST UNION CORPORATION,

        Defendants.

**NOTICE OF REMOVAL
TO FEDERAL COURT PURSUANT
28 U.S.C. §1446(a)**

83226988A01110209

TO THE HONORABLE JUDGES OF THE SUPERIOR COURT OF NEW JERSEY, LAW DIVISION, CAMDEN COUNTY:

Petitioners Wachovia Bank, N.A., Wells Fargo Advisors, LLC and Wells Fargo & Company, Defendants in the above-captioned matter, by its undersigned attorneys, Day Pitney LLP, file this Notice of Removal of this cause from the Superior Court of New Jersey, Law Division, Camden County, in which it is now pending, to the United States District Court for the District of New Jersey.

Pursuant to 28 U.S.C. §1441, the within action is now removed.

DAY PITNEY LLP
Attorneys for Defendants

By: _Dennis T. Kearney_
DENNIS T. KEARNEY
A Member of the Firm

DATED: November 2, 2009